ANTHONY NWOKEJI,       )
    Plaintiff,       )
                    )
    v.              )
                    )  C.A. No. 15-10802-MLW
ARIK AIR, AMERICAN AIRLINES,  )
    Defendants.      )
                    )
                    )

## MEMORANDUM AND ORDER

WOLF, D.J.                        September 20, 2017

Plaintiff Anthony Nwokeji brought claims against American Airlines ("American") and Arik Air ("Arik") for breach of contract and intentional and negligent infliction of emotional distress arising from his round-trip flight between Boston, Massachusetts and Lagos, Nigeria. First, he claims that defendants breached their contract with him when they caused his luggage to be delayed 19 days and damaged when it finally arrived in Lagos. Second, he alleges that defendants breached the contract again, and intentionally or negligently inflicted emotional distress, when they delayed his return flight to Boston, requiring him to wait in "unbearable" and unsanitary conditions at the Lagos airport and to miss his connection in New York.

The court referred the case to Magistrate Judge Jennifer Boal for pretrial purposes and a Report and Recommendation on dispositive motions. On January 30, 2017, the defendants filed

motions for summary judgment. In addition, American moved to strike paragraphs 14, 19, and 21 of Nwokeji's affidavit and statements of fact that rely on those paragraphs. American argued that the statements clearly contradicted Nwokeji's deposition testimony and should be disregarded for purposes of summary judgment. See Colantuoni v. Alfred Galcagni & Sons, Inc., 44 F.3d 1, 4-5 (1st Cir. 1994).

After a hearing, the Magistrate Judge issued a report recommending that the court allow the motions for summary judgment. First, she concluded that the motion to strike should be allowed in part and denied in part. In particular, she found that Nwokeji's deposition testimony contradicted statements in his affidavit that he communicated with American more than once regarding his delayed bags after he arrived in Nigeria. She found, however, that the other challenged statements in Nwokeji's affidavit were not clearly contradicted in his deposition and, therefore, considered them in deciding the motions for summary judgment.

Second, she recommended that the motions for summary judgment be allowed. She found that to the extent that Nwokeji's claims rely on state law, they are preempted by the Convention for Unification of Certain Rules Relating to International Carriage by Air, done at Montreal on May 28, 1999, ICAO Doc. 9740, reprinted in S. Treaty Doc. No. 106-45, 1999 WL 33292734 (2000) (Treaty) (the "Montreal Convention") because they allege damage to baggage

and unreasonable delays during "international carriage," as defined in Article 1 of the treaty. Such claims are within the scope of Articles 17 and 19 of the treaty and are, therefore, preempted pursuant to Article 29, which expressly "preempts the remedies of a signatory's domestic law, whether or not the application of the Convention will result in recovery in a particular case." R&R at 14-20 (quoting Gustafson v. Am. Airlines, Inc., 658 F. Supp. 2d 276, 280 (D. Mass. 2009)).

The Magistrate Judge found that even if Nwokeji's claims were properly brought under the Montreal Convention, no material facts would be in genuine dispute. First, Nwokeji did not notify American of any damage to his baggage within seven days of the date he received it and, therefore, Article 31 of the Montreal Convention bars count 1. Second, Arik took all reasonable measures to minimize the delay of Nwokeji's flight from Lagos to Boston and avoid any resulting harm to Nwokeji--including by providing him meals and hotel accommodations during the delay and offering him rescheduling, cancellation with a full refund, or a 50 percent discount on future travel. Therefore, no reasonable jury could find for Nwokeji on count 2. Third, Nwokeji did not suffer physical injury. Therefore, he cannot, under the Montreal Convention, recover the emotional distress damages sought in counts 3 and 4.

Accordingly, the Magistrate Judge concluded that there are no genuine disputes of material fact that would entitle a reasonable jury to find the defendants liable. See Fed. R. Civ. P. 56(a).

The time period for objections to the Report and Recommendation has expired. No objections have been filed. Therefore, the parties are not entitled to review of the Report and Recommendation. Borden v. Sec'y of Health & Human Servs., 836 F. 2d 4, 6 (1st Cir. 1987); Thomas v. Arn, 474 U.S. 140, 149-50 (1985). In any event, the court has reviewed the Magistrate Judge's reasoning and finds it to be thorough, thoughtful, and persuasive. Therefore, the Report and Recommendation is being adopted.

In view of the foregoing, it is hereby ORDERED that:

1.   The Magistrate Judge's Report and Recommendation (Docket No. 70) is ADOPTED and INCORPORATED pursuant to 28 U.S.C. §636.

2.   American's Motion to Strike (Docket No. 59) is ALLOWED in part and DENIED in part as described Report and Recommendation at 2-4.

3.   For the reasons stated in the Report and Recommendation, the defendants' Motions for Summary Judgment (Docket Nos. 42 & 43) are ALLOWED. Judgment shall enter for defendants.

UNITED STATES DISTRICT JUDGE

UNITED STATES DISTRICT COURT FOR
THE DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| ANTHONY NWOKEJI,<br><br>　　　　Plaintiff,<br><br>　　　　v.<br><br>ARIK AIR, <u>et al.</u>,<br><br>　　　　Defendants. | )<br>)<br>)<br>)　　Civil Action No. 1:15-10802-MLW<br>)<br>)<br>)<br>)<br>)<br>) |

REPORT AND RECOMMENDATION ON DEFENDANTS'
<u>MOTIONS FOR SUMMARY JUDGMENT AND AMERICAN'S MOTION TO STRIKE</u>
[Docket Nos. 42, 43, 59]

August 17, 2017

BOAL, M.J.

　　　　Plaintiff Anthony Nwokeji asserts claims for breach of contract as well as intentional and negligent infliction of emotional distress against defendants Arik Air ("Arik") and American Airlines ("American")[1] as a result of a delayed and damaged bag and a delayed flight. The defendants have moved for summary judgment. Docket Nos. 42, 43. American has also moved to strike certain portions of the summary judgment record. Docket No. 59. For the following reasons, the Court recommends[2] that the District Judge assigned to this case grant the motions for summary judgment and grant in part and deny in part American's motion to strike.

---

[1] Nwokeji named American Airlines as a defendant. Defendant American Airlines asserts that its proper name is American Airlines, Inc. In any event, in this opinion, the Court refers to this defendant as "American."

[2] On June 7, 2016, the District Court referred this case to the undersigned for full pretrial proceedings, including a report and recommendation on dispositive motions. Docket No. 19.

I.     PROCEDURAL BACKGROUND

On January 30, 2017, Arik and American filed motions for summary judgment. Docket Nos. 42, 43. Nwokeji opposed both motions for summary judgment. Docket Nos. 49, 50, 56, 57. The defendants each filed a reply brief on March 7, 2017. Docket Nos. 51, 52.

Nwokeji initially did not respond to the defendants' statements of facts. This Court ordered him to do so, Docket No. 55, and Nwokeji in turn filed both a response to each defendant's statement of facts as well as his own statement of facts. Docket Nos. 56-1, 56-2, 56-3. Both defendants responded to Nwokeji's statement of facts. Docket Nos. 58, 69. In addition, American filed a motion to strike portions of Nwokeji's affidavit, statement of facts and responses to American's own statement of facts. Docket No. 59. Nwokeji did not oppose the motion to strike. The Court heard oral argument on July 27, 2017.

II.    FACTUAL BACKGROUND

   A.     Scope Of The Record

In order to determine which materials are properly before the Court for purposes of deciding the summary judgment motions, the Court must first decide American's motion to strike. For the following reasons, this Court grants in part and denies in part the motion.

American moves to strike paragraphs 14, 19 and 21 of Nwokeji's affidavit (Docket No. 57-1) as contradictory to his deposition testimony. Docket No. 59 at 6-8. American also moves to strike Nwokeji's statements of fact that rely on these paragraphs in the affidavit. Id. at 3-4. "When an interested witness has given clear answers to unambiguous questions, he cannot create a conflict and resist summary judgment with an affidavit that is clearly contradictory, but does not give a satisfactory explanation of why the testimony is changed." Colantuoni v. Alfred Galcagni & Sons, Inc., 44 F.3d 1, 4-5 (1st Cir. 1994) (citations omitted). "The purpose of this

2

sham affidavit rule is to protect the procedural integrity of summary judgment." Mahan v. Bos. Water & Sewer Comm'n, 179 F.R.D. 49, 53 (D. Mass. 1998). "If a party simply could offer a contradictory, post-deposition affidavit to defeat summary judgment without providing a 'satisfactory explanation' for the contradiction, the purpose of summary judgment would be defeated." Id. (citing Perma Research & Dev. Co. v. Singer Co., 410 F.2d 572, 578 (2d Cir. 1969)).

A party moving to strike an affidavit must specify the objectionable portions of the affidavit and the specific grounds for objection. Facey v. Dickhaut, 91 F. Supp. 3d 12, 19 (D. Mass. 2014). The Court will disregard only those portions of the affidavit that are inadmissible and consider the rest of it. Id.

This Court has reviewed the subject documents and agrees that paragraph 14 of Nwokeji's affidavit is contradictory to his deposition testimony. In paragraph 14, Nwokeji states that "[o]n each trip to the Airport, Defendants continued to tell me to come the subsequent following days." Docket No. 57-1 at 2. At his deposition, Nwokeji testified that upon arriving in Lagos, Nigeria, he called American Airlines. Docket No. 47-2 at 21-22. Otherwise, his only communications regarding the delayed bag were with individuals not employed by the defendants. Id. Rather, they worked for British Airways ("BA") or for Lagos' airport warehouse and were unaffiliated with an airline. Id. His deposition testimony therefore contradicts the affidavit's statement that Nwokeji spoke to American or Arik employees every day. Accordingly, the Court will not consider paragraph 14 in deciding the summary judgment motions. Because paragraph 11 of Nwokeji's statement of facts, Docket No. 56-3 at 2, relies on paragraph 14 of his affidavit, Docket No. 57-1 at 2, American moves to strike paragraph 11. For the above stated reasons, the Court will not consider that paragraph as well.

Paragraphs 19 and 21 of the affidavit, Docket No. 57-1 at 2, on the contrary, do not clearly contradict Nwokeji's deposition testimony and/or interrogatory responses. In paragraph 19, Nwokeji states that on July 18, 2014, he "decided to go back to Lagos in search of [his] luggage." Docket No. 57-1 at 2. At his deposition, Nwokeji testified that he returned to Lagos after receiving a text message from BA that his luggage had arrived. Docket No. 47-2 at 25. The difference between returning to Lagos to search for his luggage and returning in response to a text message that the luggage was found is not so contradictory as to mandate its exclusion from the record. Similarly, in paragraph 21, Nwokeji states that "most" of the items in his luggage were missing. Docket No. 57-1 at 2. Despite being vague, such statements do not necessarily contradict testimony that the bag weighed fifty pounds, Docket No. 47-2 at 16, or an interrogatory response delineating which items were allegedly missing. Docket No. 59-5 at 2-3. Accordingly, the Court will consider paragraphs 19 and 21 of Nwokeji's affidavit. For these reasons, the Court will also consider paragraph 16 of Nwokeji's statement of facts, Docket No. 56-3 at 3, that is based on paragraph 19 of the affidavit.

In addition, American moves to strike paragraph 8 of Nwokeji's statement of facts which provides: "But he was asked to come back the next [sic] Arik flight to Lagos, for his luggage." Docket No. 56-3 at 2. In support of paragraph 8, Nwokeji cites to his deposition testimony that describes conversations with BA regarding the location of his missing bag. Docket No. 47-2 at 21. The Court agrees that paragraph 8 is not supported by the cited portions of the record in violation of Local Rule 56.1. It should therefore not be considered in deciding the motions for summary judgment.

4

To the extent Nwokeji's own statements and responses to American's statement of facts do not otherwise comply with Local Rule 56.1, the Court addresses such arguments in connection with the recitation of the facts below.

B.     Facts[3]

On May 22, 2014, Nwokeji purchased a single round trip ticket for flights on American Airlines and Arik Air from Adam Travel, with the following scheduled travel itinerary:[4]

| Date | Carriage | Flight No. |
|---|---|---|
| June 26, 2014 | Boston (Logan Airport) to New York (JFK)[5] | American flight AA 1165 |
| June 26, 2014 | New York (JFK) to Lagos (Murtala Muhammad Airport) | Arik flight W3 108 |
| August 3, 2014 | Lagos to New York | Arik flight W3 107 |
| August 4, 2014 | New York to Boston | American flight AA 84 |

1.   Departure Leg And Delayed Baggage

On June 26, 2014, Nwokeji checked two bags at the American Airlines counter at Boston's Logan Airport for flight AA 1165.[6] That flight left Boston at 6:20 a.m. and arrived at

---

[3] Because this case is before the Court on a motion for summary judgment, the Court sets out any disputed facts in the light most favorable to Nwokeji, the non-moving party. See DeNovellis v. Shalala, 124 F.3d 298, 302 (1st Cir. 1997). The facts are taken from American Airlines Statement of Material Facts in Support of its Motion for Summary Judgment (Docket No. 45) ("American SOF"); Plaintiff's Objections and Responses to Defendant American Airlines' Statements of Material Facts (Docket No. 56-1) ("American Pl. Resp."); Defendant Arik Air Limited's Rule 56.1 Statement of Material Facts (Docket No. 47) ("Arik SOF"); Plaintiff's Objections and Responses to Defendant Arik Air's Statements of Material Facts (Docket No. 56-2) ("Arik Pl. Resp."); Plaintiff Anthony Nwokeji's Statements of Material Facts (Docket No. 56-3) ("Pl. SOF"); Defendant American Airlines, Inc.'s Response to Anthony Nwokeji's Statements of Material Facts (Docket No. 58) ("American Resp."); and Defendant Arik Air Limited's Response to Plaintiff Anthony Nwokeji's Statements Material Facts (Docket No. 69) ("Arik Resp.").

[4] Arik SOF ¶ 2; Arik Pl. Resp. ¶ 2.

[5] Arik's statement of fact asserts that the first leg of Nwokeji's journey was from Boston Logan Airport to New York "MK Airport", Arik SOF ¶ 2, which appears to be a typographical error. See American SOF ¶ 9; American Pl. Resp. ¶ 9.

[6] Arik SOF ¶ 3; Arik Pl. Resp. ¶ 3.

New York's JFK Airport at 7:30 a.m.[7]  American does not fly to Nigeria.[8]  American also is not party to an interline agreement with Arik or any other agreement regarding the transfer or carriage of baggage from one carrier to another.[9]  As a result, at JFK, Nwokeji was required to claim the bags he checked on flight AA 1165 and then re-check those bags with Arik prior to boarding Arik flight W3 108.[10]

Upon arrival in New York, Nwokeji went to retrieve his luggage at the baggage carousel, but could only find one of his two checked bags.[11]  As a result, Nwokeji spoke with Monica, a person working for or on behalf of American.[12]  Nwokeji did not speak with any Arik employee about his missing bag.[13]  Monica informed Nwokeji that his second bag was found in Boston.[14]  She provided Nwokeji with her contact information and advised him that he should continue on to Lagos.[15]

---

[7] American SOF ¶ 9; American Pl. Resp. ¶ 9.

[8] American SOF ¶ 69; American Pl. Resp. ¶ 69.  Nwokeji does not dispute this fact but claims that it is immaterial.

[9] Arik SOF ¶ 5.  Nwokeji disputes this fact because Monica "promis[ed] to forward the delayed bag with the next available flight in Lagos."  Arik Pl. Resp. ¶ 5.  However, this statement is not responsive to the existence of an interline agreement between the parties.

[10] American SOF ¶ 15; American Pl. Resp. ¶ 15.

[11] Arik SOF ¶ 7; Arik Pl. Resp. ¶ 7.

[12] American SOF ¶ 16; American Pl. Resp. ¶ 16.  Arik SOF ¶ 8; Arik Pl. Resp. ¶ 8.

[13] Arik SOF ¶ 14; Arik Pl. Resp. ¶ 14.  Nwokeji disputes this fact as being unsupported by his deposition testimony.  However, Nwokeji testified at his deposition that he did not communicate with anyone at JFK except for Monica.  Docket No. 47-2 at 20-21.

[14] Arik SOF ¶ 10; Arik Pl. Resp. ¶ 10.

[15] Arik SOF ¶ 11; Arik Pl. Resp. ¶ 11.

Nwokeji gave Monica his contact information in Lagos and agreed to pick up his bag there.[16] He did not fill out any forms, list what was in the missing bag or inform American that his ultimate destination was in eastern Nigeria, which is a significant distance from Lagos.[17]

American made arrangements with BA (with whom American has a baggage agreement)[18] to forward Nwokeji's bag from New York to Lagos.[19] The baggage transfer from American to BA, which was marked urgent, was completed on June 27, 2014.[20]

Nwokeji checked only one bag with Arik for flight W3 108 and that bag arrived with him at Murtala Muhammed International Airport ("MMIA") in Lagos.[21] The missing bag did not.[22] Nwokeji first asked an individual whom Nwokeji thought to be affiliated with or an employee of Arik about the status of his missing bag.[23] That person informed him that the bag did not arrive with flight W3 108, but Nwokeji should check back later when the next Arik flight arrived from New York.[24] After speaking with this individual, Nwokeji contacted Monica by telephone.[25] She informed him that American forwarded his bag to Lagos via a BA flight and provided Nwokeji with the flight number, scheduled time of arrival and baggage claim number.[26] After

---

[16] American SOF ¶ 17; American Pl. Resp. ¶ 17.
[17] American SOF ¶¶ 18, 20; American Pl. Resp. ¶¶ 18, 20. Nwokeji disputes these statements by stating that Monica did not request the information and that American did not provide any forms. However, these statements are not properly supported pursuant to Local Rule 56.1.
[18] American SOF ¶ 27; American Pl. Resp. ¶ 27.
[19] Arik SOF ¶ 12; Arik Pl. Resp. ¶ 12.
[20] American SOF ¶¶ 31, 32; American Pl. Resp. ¶¶ 31, 32.
[21] Arik SOF ¶¶ 15-16; Arik Pl. Resp. ¶¶ 15-16.
[22] Arik SOF ¶ 16; Arik Pl. Resp. ¶ 16.
[23] American SOF ¶ 25; American Pl. Resp. ¶ 25 (citing Docket No. 47-2 at 21).
[24] American SOF ¶ 25; American Pl. Resp. ¶ 25 (citing Docket No. 47-2 at 21).
[25] American SOF ¶ 26; American Pl. Resp. ¶ 26.
[26] American SOF ¶ 26; American Pl. Resp. ¶ 26.

this conversation with Monica, for the rest of his stay in Nigeria, the only air carrier Nwokeji spoke with about his delayed bag was BA.[27]

Nwokeji waited at the Lagos airport for his bag to arrive, but when the BA flight landed, his bag was not on it.[28] Nwokeji gave BA his name and contact number.[29] BA informed him that they would "log in" the arrival of his bag in Lagos.[30] Instead of travelling to eastern Nigeria, he made the decision to wait for his bag at a hotel in Lagos and take a taxi daily from his hotel to the airport to check for it.[31] After spending 14 days at the hotel, Nwokeji left Lagos for eastern Nigeria.[32]

Two to three days later, Nwokeji received a text message from BA that his bag had arrived in Lagos, and so he traveled back to Lagos to claim the bag.[33] He collected his bag from a warehouse at MMIA on July 19, 2014.[34] Nwokeji alleges that it was damaged and items were missing.[35] He informed individuals working at the warehouse of the missing items.[36] These individuals were unassociated with any air carrier.[37] They told Nwokeji that he would have to consult the airline.[38] After collecting his bag from the warehouse, Nwokeji did not raise any

---

[27] American SOF ¶ 33; American Pl. Resp. ¶ 33.
[28] American SOF ¶ 34; American Pl. Resp. ¶ 34.
[29] Arik SOF ¶ 23; Arik Pl. Resp. ¶ 23.
[30] Arik SOF ¶ 23; Arik Pl. Resp. ¶ 23.
[31] American SOF ¶ 37. In his response, Nwokeji claims that Arik Air and/or Monica of American Airlines and/or BA told him each day that the bag would be on the next flight. American Pl. Resp. ¶ 37. However, Nwokeji's deposition testimony does not support this response. See Docket No. 47-2 at 21-22.
[32] American SOF ¶ 39; American Pl. Resp. ¶ 39.
[33] American SOF ¶¶ 42-43; American Pl. Resp. ¶¶ 42-43.
[34] American SOF ¶ 45; American Pl. Resp. ¶ 45.
[35] Arik SOF ¶¶ 29-30; Arik Pl. Resp. ¶¶ 29-30.
[36] American SOF ¶ 47. Nwokeji has not specifically responded to this statement and, therefore, it is deemed admitted.
[37] Id.
[38] American SOF ¶ 48; American Pl. Resp. ¶ 48.

issues regarding the bag with any air carrier until he returned to New York on August 5, 2014, where he spoke in person with an American ticket agent.[39]  Other than the instant lawsuit, American maintains that Nwokeji never filed a written missing items report or claim with American.[40]  Nwokeji maintains that he filled out a lost baggage log with BA.[41]

Arik has no access to American's or BA's records and so could not check on the status of Nwokeji's missing bag.[42]  Nwokeji never submitted a notice of claim to Arik.[43]  In fact, Nwokeji's missing bag was never in the possession of nor handled by Arik.[44]

### 2.  Return Leg And Delayed Flight

On August 3, 2014, Nwokeji arrived at MMIA around 8:00 p.m. for Arik flight W3 107 which was scheduled to depart at 11:20 p.m.[45]  He went to an airport security checkpoint at approximately 10:00 p.m. when he heard an announcement instructing flight W3 107 passengers to head to the departure gate.[46]  He reached the departure gate waiting area at approximately 10:30 p.m.[47]  Flight W3 107 did not board as scheduled and Nwokeji claims that he remained in the waiting area from approximately 10:30 p.m. on August 3, 2014 to 10:00 a.m. on August 4, 2014.[48]  Nwokeji described the waiting area as a "glass enclosure with [an] opening to go in the

---

[39] Arik SOF ¶ 32; Arik Pl. Resp. ¶ 32.

[40] American SOF ¶ 64.

[41] American Pl. Resp. ¶ 64.

[42] Arik SOF ¶ 21. Nwokeji disputes paragraph 21 with statements that are nonresponsive and deposition testimony that neither contradicts the fact nor supports his assertions.  Arik Pl. Resp. ¶ 21.

[43] Arik SOF ¶ 33. Nwokeji disputes paragraph 33, but his response does not address the statement of fact at issue and instead contains legal conclusions.  Arik Pl. Resp. ¶ 33.

[44] Arik SOF ¶ 35; Arik Pl. Resp. ¶ 35.

[45] Arik SOF ¶ 36; Arik Pl. Resp. ¶ 36.

[46] Arik SOF ¶ 37; Arik Pl. Resp. ¶ 37.

[47] Arik SOF ¶ 39. Nwokeji did not respond to paragraph 39 and so it is deemed admitted.

[48] Arik SOF ¶ 44; Arik Pl. Resp. ¶ 44.

plane" with a "few chairs," no stores, restaurants or windows and no air conditioning. [49] Nwokeji claims that the restroom on the lower level had urine and feces on the floor, no toilet paper and no running water. [50] Nwokeji claims also that the conditions led to verbal and physical fighting between some passengers and Arik staff. [51] Nwokeji did not personally discuss the conditions of the waiting area with airport personnel because he claims "others were already doing that." [52] He did not sustain bodily injury as a result of the experience. [53] He also did not see a doctor, therapist or any other medical professional or take medication for his alleged emotional distress. [54]

Flight W3 107 was delayed due to an unforeseen fuel shortage with respect to Jet A-1 aviation fuel in Lagos. [55] During the delay, Arik worked towards obtaining the fuel necessary for the flight. [56] At approximately 3:00 a.m. or 4:00 a.m., an individual who identified himself as the night manager or supervisor arrived in the waiting area and informed passengers that the flight was not at the gate and was delayed due to fuel issues. [57] Nevertheless, Nwokeji states that he remained in the waiting area overnight out of concern that he would miss his flight. [58]

---

[49] Arik SOF ¶¶ 43, 45-46; Arik Pl. Resp. ¶¶ 43, 46.

[50] Arik SOF ¶ 47; Arik Pl. Resp. ¶ 47.

[51] Pl. SOF ¶ 33; American Resp. ¶ 33; Arik Resp. ¶ 33.

[52] Arik SOF ¶ 52; Arik Pl. Resp. ¶ 52.

[53] Arik SOF ¶ 65; Arik Pl. Resp. ¶ 65.

[54] Arik SOF ¶ 66; Arik Pl. Resp. ¶ 66.

[55] Arik SOF ¶ 69. Nwokeji disputes that the fuel shortage was "unforeseen" and cites to "Credible Newspaper Article". However, the newspaper article appears to be dated February 2017, does not address fuel shortages that may have taken place in August 2014, and in any event, is not admissible evidence. See United States v. Pryor, 960 F.2d 1, 3 (1st Cir. 1992).

[56] Arik SOF ¶ 70. Nwokeji disputes paragraph 70, but his statement is not responsive and is not supported by any evidence.

[57] Arik SOF ¶ 54; Arik Pl. Resp. ¶ 54.

[58] Arik SOF ¶ 50; Arik Pl. Resp. ¶ 50.

On the morning of August 4, 2014, Arik provided Nwokeji and the other flight W3 107 passengers with hotel accommodations and food near MMIA.[59] While at the hotel, Nwokeji ate lunch, took a shower and watched television.[60] Later that day, Nwokeji returned to the airport where he spoke with Arik about his connecting American flight from New York to Boston.[61] Arik told Nwokeji that he would need to "deal with American."[62]

Flight W3 107 departed Lagos at 11:50 p.m. on August 4, 2014.[63] As a result of the delay, Arik provided passengers with a letter that offered: (1) a 50% discount on their next travel with Arik, valid until August 2015; (2) no date change fees for those opting to reschedule their carriage on flight W3 107; and (3) a full refund for those wishing to cancel their reservation altogether.[64] Nwokeji rejected Arik's offers because he thought they were insulting.[65]

After landing at New York's JFK airport, Nwokeji missed his American flight back to Boston.[66] His ticket was only valid for the specified flight and date of travel.[67] Neither Nwokeji nor his travel agent notified American prior to the ticket's expiration that Nwokeji would not be able to make the flight due to delays getting out of Nigeria.[68] He purchased a new $270 ticket for a later flight from New York to Boston.[69]

---

[59] Arik SOF ¶ 55; Arik Pl. Resp. ¶ 55.
[60] Arik SOF ¶ 57; Arik Pl. Resp. ¶ 57.
[61] Arik SOF ¶ 59; Arik Pl. Resp. ¶ 59.   Docket No. 47-2 at 41-42.
[62] Arik SOF ¶ 73; Arik Pl. Resp. ¶ 73.
[63] Arik SOF ¶ 62; Arik Pl. Resp. ¶ 62.
[64] Arik SOF ¶ 60; Arik Pl. Resp. ¶ 60.
[65] Arik SOF ¶ 61; Arik Pl. Resp. ¶ 61.
[66] Pl. SOF ¶ 37; American Resp. ¶ 37; Arik Resp. ¶ 37.
[67] American SOF ¶ 67.  Although Nwokeji disputes paragraph 67, his statement is nonresponsive.
[68] American SOF ¶ 68.  Although Nwokeji disputes paragraph 68, his statement is nonresponsive.
[69] Pl. SOF ¶ 39; American Resp. ¶ 39; Arik Resp. ¶ 39.

III.   STANDARD OF REVIEW

Summary judgment is appropriate "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). "A dispute is 'genuine' if the evidence about the fact is such that a reasonable jury could resolve the point in the favor of the non-moving party." Sanchez v. Alvarado, 101 F.3d 223, 227 (1st Cir. 1996) (quotations and citations omitted). A material fact is one which has "the potential to affect the outcome of the suit under the applicable law." Id. (quotations and citations omitted).

The moving party bears the initial burden of establishing that there is no genuine issue of material fact. See Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986). If that burden is met, the opposing party can avoid summary judgment only by providing properly supported evidence of disputed material facts that would require trial. See id. at 324. "[T]he non-moving party 'may not rest upon mere allegation or denials of his pleading,'" but must set forth specific facts showing that there is a genuine issue for trial. LeBlanc v. Great Am. Ins. Co., 6 F.3d 836, 841 (1st Cir. 1993) (quoting Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 256 (1986)).

The court must view the record in the light most favorable to the non-moving party and indulge all reasonable inferences in that party's favor. See O'Connor v. Steeves, 994 F.2d 905, 907 (1st Cir. 1993). However, "[a]s to any essential factual element of its claim on which the nonmovant would bear the burden of proof at trial, its failure to come forward with sufficient evidence to generate a trialworthy issue warrants summary judgment to the moving party." McRory v. Spigel (In re Spigel), 260 F.3d 27, 31 (1st Cir. 2001) (citation omitted). "If, after viewing the record in the non-moving party's favor, the Court determines that no genuine issue of material fact exists and the moving party is entitled to judgment as a matter of law, summary

12

judgment is appropriate." Walsh v. Town of Lakeville, 431 F. Supp. 2d 134, 143 (D. Mass. 2006).

IV.   DISCUSSION

Nwokeji brings state law claims against American and Arik for breach of contract as a result of delayed and damaged baggage (Count 1); breach of contract arising from the return leg of his trip (Count 2); and intentional and negligent infliction of emotional distress as a result of the unsanitary MMIA waiting area (Counts 3 and 4). Amended Compl. ¶¶ 33-59. Although Nwokeji asserts that the instant action is brought pursuant to the Warsaw Convention[70] as amended by the 1999 Montreal Convention,[71] id. at ¶ 28, he brings no claims pursuant to either Convention.

In their summary judgment motions, the defendants contend that each count is preempted by an international treaty, namely, the Montreal Convention.  Docket Nos. 44, 46, 51, 52. Alternatively, Arik argues that even if Nwokeji had properly brought his claims under the relevant provisions of the Montreal Convention rather than under state law, they would still fail. Docket Nos. 46, 52. This Court agrees with both arguments for granting summary judgment.

---

[70] The treaty is formally known as the Convention for the Unification of Certain Rules Relating to International Transportation by Air, done at Warsaw on Oct. 12, 1949, 49 Stat. 3000, T.S. 876 (1934) reprinted 1934 WL 29042 (hereinafter "Warsaw Convention").
[71] The treaty is formally known as the Convention for Unification of Certain Rules Relating to International Carriage by Air, done at Montreal on May 28, 1999, ICAO Doc. 9740, reprinted in S. Treaty Doc. No. 106-45, 1999 WL 33292734 (2000) (Treaty) (hereinafter "Montreal Convention").

A. <u>The Montreal Convention Affords The Exclusive Remedy</u>

1. <u>Background</u>

The Montreal Convention entered into force on November 4, 2003 and succeeded the

Warsaw Convention.[72] The purpose of the Montreal Convention is as follows:

> The Montreal Convention "was the product of a United Nations effort to reform
> the Warsaw Convention 'so as to harmonize the hodgepodge of supplementary
> amendments and intercarrier agreements of which the Warsaw Convention system
> of liability consists.' " <u>Sompo Japan Insurance, Inc. v. Nippon Cargo Airlines Co.,
> Ltd.</u>, 522 F.3d 776, 780 (7th Cir.2008) (quoting <u>Ehrlich v. American Airlines,
> Inc.</u>, 360 F.3d 366, 371 n. 4 (2nd Cir.2004)). The Montreal Convention, which
> "unifies and replaces" the Warsaw Convention, attempts to "balance the interests
> of air carriers and potential plaintiffs." <u>Id.</u> at 789. It achieves this purpose "by
> limiting air carriers' potential liability to predictable, non-catastrophic damages
> and also by preserving a plaintiff's right to recover its losses up to a certain
> amount." <u>Id.</u> at 776 & 780. The preamble expressly recognizes " 'the importance
> of ensuring protection of the interests of consumers in international carriage by air
> and the need for equitable compensation based on the principle of restitution.' "
> <u>Id.</u> at 781 (quoting preamble).

<u>Goodwin v. British Airways PLC</u>, No. 09-10463-MBB, 2011 WL 3475420, at *3 (D. Mass. Aug.

8, 2011).

Although the Montreal Convention is undeniably a new treaty, a number of the

provisions of the Montreal Convention are taken directly from the Warsaw Convention and the

many amendments thereto. <u>Gustafson v. Am. Airlines, Inc.</u>, 658 F. Supp. 2d 276, 282 (D. Mass.

2009). In particular, courts have found the provisions of Articles 19, 17 and 1(3) of the Montreal

Convention to be substantively similar to the corresponding articles in the Warsaw Convention.

<u>See, e.g.</u>, <u>Shabotinsky v. Deutsche Lufthansa AG</u>, No. 16 C 4865, 2017 WL 1134475, at *3 n.3

(N.D. Ill. Mar. 27, 2017) (Article 19); <u>Jacob v. Korean Air Lines Co.</u>, No. 12-62384-CIV, 2014

---

[72] In his opposition memorandum, Nwokeji focuses on the Warsaw Convention. <u>See</u> Docket No.
56 at 5. However, the alleged incidents occurred between June 26, 2014 and August 4, 2014. Arik
SOF ¶ 2; Arik Pl. Resp. ¶ 2. Accordingly, the Montreal Convention, rather than the Warsaw
Convention, applies to the instant dispute.

WL 243150, at *7 (S.D. Fla. Jan. 13, 2014) (Article 17); <u>Kruger v. United Air Lines, Inc.</u>, No. C 06-04907 MHP, 2007 WL 3232443, at *4 (N.D. Cal. Nov. 1, 2007) (Article 1(3)).  In addition, Article 29 of the Montreal Convention and Article 24, Section 1 of the Warsaw Convention utilize substantively similar language and have "identical preemptive effect." <u>Jacob</u>, 2014 WL 243150, at *7 (quoting <u>Ugaz v. Am. Airlines, Inc.</u>, 576 F. Supp. 2d 1354, 1360 (S.D. Fla. 2008)). Moreover, courts interpreting Article 31 of the Montreal Convention have relied on cases discussing Article 26 of the Warsaw Convention because "there is no meaningful difference between" the two.  <u>UPS Supply Chain Sols., Inc. v. Am. Airlines, Inc.</u>, 646 F. Supp. 2d 1011, 1014 n.1 (N.D. Ill. 2009) (citing <u>Meteor AG v. Fed. Express Corp.</u>, No. 08 Civ. 3773, 2009 WL 222329, at *3 (S.D.N.Y. Jan. 30, 2009) (internal quotation marks omitted)).  Therefore, case law interpreting provisions of the Warsaw Convention applies to cases interpreting "substantively similar" provisions of the Montreal Convention.  <u>Gustafson</u>, 658 F. Supp. 2d at 282 (collecting cases).

The Montreal Convention governs international air carriage of passengers, baggage and cargo. <u>Eke v. Deutsche Lufthansa</u>, No. 13-11099-GAO, 2013 WL 12201891, at *7 (D. Mass. Oct. 2, 2013). It defines "international carriage" as:

> any carriage in which, according to the agreement between the parties, the place of departure and the place of destination, whether or not there be a break in the carriage or a transshipment, are situated either within the territories of two State Parties, or within the territory of a single State Party if there is an agreed stopping place within the territory of another State, even if that State is not a State Party. Carriage between two points within the territory of a single State Party without an agreed stopping place within the territory of another State is not international carriage for purposes of this Convention.

Montreal Convention, art. 1(2). The United States is a "State Party" under the Montreal Convention. <u>Gustafson</u>, 658 F. Supp. 2d at 286.

Article 29 of the Montreal Convention provides that "any action for damages [in the carriage of passengers, baggage and cargo], however founded, whether under this Convention or in contract or in tort or otherwise, can only be brought subject to the conditions and such limits of liability as are set out in this Convention." Montreal Convention, art. 29. Thus, the determinative issue is whether the Montreal Convention applies in a given situation. However, the Montreal Convention preempts state law causes of action only "to the extent they fall within its substantive scope." Bridgeman v. United Cont'l Holdings, Inc., 552 Fed. Appx. 294, 296 (5th Cir. 2013) (citing El Al Isr. Airlines Ltd. v. Tseng, 525 U.S. 155, 172 (1999)). If applicable, it "preempts the remedies of a signatory's domestic law, whether or not the application of the Convention will result in recovery in a particular case." Gustafson, 658 F. Supp. 2d at 280 (collecting cases). A passenger whose claim implicates, but is not compensable under the Montreal Convention, has no recourse to an alternate remedy. See Tseng, 525 U.S. at 171-72.

The applicability of the Montreal Convention is a "question of law to be decided by the court on the basis of the pertinent facts of each case." See Eke, 2013 WL 12201891, at *11. "In determining whether a claim is preempted because it falls within what the Supreme Court has termed the 'substantive scope' of the treaty, [courts] are directed to look to the Convention's liability provisions." King v. Am. Airlines, Inc., 284 F.3d 352, 358 (2d Cir. 2002) (citing Tseng, 525 U.S. at 171-72).

2. Application To Trips Involving Successive Carriers

"International carriage may involve multiple successive air carriers, even when a carrier only provides carriage within a single country, so long as the carriage has been regarded by the parties as a single operation, whether it had been agreed upon under the form of a single contract or of a series of contracts." Lin Zhang v. Air China Ltd., 866 F. Supp. 2d 1162, 1167 (N.D. Cal.

2012) (internal quotation marks omitted); see Montreal Convention, art. 1(3).[73] To determine whether international travel involving successive carriers is undivided carriage "regarded by the parties as a single operation", Montreal Convention, art. 1(3), courts focus on objective evidence, rather than any subjective intent. See Robertson v. Am. Airlines, Inc., 277 F. Supp. 2d 91, 98-99, 99 n.11 (D.D.C. 2003), aff'd, 401 F.3d 499 (D.C. Cir. 2005). Courts have found the simultaneous issuance of tickets at one place sufficient to establish the "single operation" required by Article 1(3) even where some legs of a trip are wholly domestic and/or on separate airlines. Haldimann v. Delta Airlines, Inc., 168 F.3d 1324, 1325-26 (D.C. Cir. 1999) (collecting cases). Another relevant fact is the length of a passenger's layover. See Robertson, 401 F.3d at 502-03.

Article 36 of the Montreal Convention governs the liability of successive carriers. Montreal Convention, art. 36; see Gustafson, 658 F. Supp. 2d at 285 (citation omitted). It states that a passenger entitled to compensation can take action "only against the carrier which performed the carriage during which the accident or the delay occurred . . . [unless], by express agreement, the first carrier has assumed liability for the whole journey." Montreal Convention, art. 36(2). Similarly, "[a]s regards baggage", a passenger "may take action against the carrier which performed the carriage during which the destruction, loss, damage or delay took place." Id. at art. 36(3).

---

[73] Article 1(3) of the Montreal Convention provides that "[c]arriage to be performed by several successive carriers is deemed, for the purposes of this Convention, to be one undivided carriage if it has been regarded by the parties as a single operation, whether it had been agreed upon under the form of a single contract or of a series of contracts, and it does not lose its international character merely because one contract or a series of contracts is to be performed entirely within the territory of the same State." Montreal Convention, art. 1(3).

Nwokeji's trip is subject to the Montreal Convention. His place of departure (Boston) and place of ultimate destination (Boston) were both within the territory of a single state party (the United States), with an agreed stopping place within the territory of another state (Nigeria).[74] He booked his entire trip with Adam Travel.[75] His layover at New York's JFK airport was only five hours.[76] Therefore, the objective evidence indicates Nwokeji's travel, including the flights on American Airlines, qualifies as international carriage under the Montreal Convention.

3. Relevant Liability Provisions Of Montreal Convention

The Montreal Convention's liability provisions include two at issue here: (1) Article 17(2) which creates the possibility of liability for loss of, or damage to, baggage,[77] and (2) Article 19 which creates the possibility of liability for damage occasioned by delay in the carriage of passengers or baggage.[78] See Montreal Convention, arts. 17(2), 19. A state law claim, however founded, that implicates either liability provision is preempted by the Convention. See Mikerina v. Delta Air Lines, Inc., 834 F. Supp. 2d 54, 57 (D. Mass. 2011).

When the Montreal Convention applies, it governs all claims within its scope and preempts any state law claims. Nwokeji's breach of contract claim arising from delayed and

---

[74] Arik SOF ¶ 2; Arik Pl. Resp. ¶ 2.

[75] Arik SOF ¶ 2; Arik Pl. Resp. ¶ 2. Docket No. 45-1.

[76] Docket No. 47-2 at 15.

[77] Article 17(2) provides in pertinent part as follows: "The carrier is liable for damage sustained in case of destruction or loss of, or of damage to, checked baggage upon condition only that the event which caused the destruction, loss or damage took place on board the aircraft or during any period within which the checked baggage was in the charge of the carrier." Montreal Convention, art. 17(2).

[78] Article 19 provides in pertinent part as follows: "The carrier is liable for damage occasioned by delay in the carriage by air of passengers, baggage or cargo. Nevertheless, the carrier shall not be liable for damage occasioned by delay if it proves that it and its servants and agents took all measures that could reasonably be required to avoid the damage or that it was impossible for it or them to take such measures." Montreal Convention, art. 19.

damaged baggage (Count 1) falls squarely within Articles 17(2) and 19 of the Montreal

Convention, respectively. See Eke, 2013 WL 12201891, at *7 n.9, *8 (claims based on delayed

and damaged baggage are preempted).  Therefore, Count 1 is preempted by the Montreal

Convention.

Similarly, Nwokeji's breach of contract claim arising from the return leg of his trip

(Count 2) is within the scope of Article 19 of the Montreal Convention. See Helge Mgmt., Inc.

v. Delta Air Lines, Inc., No. 11-10299-RBC, 2012 WL 2990728, at *3 (D. Mass. July 19, 2012)

(analyzing claims arising from twenty-four hour flight delay under Article 19).  Therefore, it is

preempted by the Montreal Convention.

Finally, the emotional distress claims (Counts 3 and 4) fall within the scope of Article 19

because the "need" for Nwokeji to remain in the MMIA waiting area was only occasioned by his

delayed flight. See Lee v. Am. Airlines, Inc., No. Civ, A 301CV1179P, 2002 WL 1461920, at

*3-4 (N.D. Tex. July 2, 2002), aff'd, 355 F.3d 386 (5th Cir. 2004) (analyzing emotional distress

claim arising from flight delay and attendant wait at departure gate under Article 19).  Therefore,

Counts 3 and 4 are preempted by the Montreal Convention.

Nwokeji contends that preemption only affects state law causes of action based on

incidents that occurred on board the aircraft or in the course of embarking and disembarking.

See Docket No. 56 at 5.  Nwokeji is correct that there is such a limitation, but it only applies to

bodily injury.  This limiting language is only included in Article 17(1) of the Convention, which

describes air carrier liability for injury to a person. See Montreal Convention, art. 17(1) ("for

carrier liability for death or bodily injury of a passenger caused by an accident on board the

aircraft or in the course of embarking or disembarking").  For baggage damage and/or delay

actionable under Article 17(2) of the Montreal Convention, there is no such limitation.  See

Montreal Convention, art. 17(2) ("for destruction, loss, or damage to checked baggage caused by an event taking place on board the aircraft or while the baggage was in the charge of the carrier").

Accordingly, this Court recommends that the District Judge grant summary judgment in favor of the defendants on the basis that all of Nwokeji's state claims are preempted.

B.     Even If Properly Brought Under The Montreal Convention, Nwokeji's Claims Would Still Fail

In the instant case, even if Nwokeji had brought his claims under the relevant provisions of the Montreal Convention, they would have failed.

1. Article 19: Emotional Distress Claims

Nwokeji argues that he suffered emotional distress as a result of his prolonged wait in the MMIA gate departure area. Amended Compl. ¶¶ 45-59. The Montreal Convention does not provide for emotional distress or mental anguish damages except where a passenger suffered a physical injury. See Bassam v. Am. Airlines, 287 Fed. Appx. 309, 318 (5th Cir. 2008) (emotional distress damages not recoverable); Seshadri v. British Airways PLC, No. 3:14-cv-00833-BAS (WVG), 2014 WL 5606542, at *10 (S.D. Cal. Nov. 4, 2014) (same); Eke, 2013 WL 12201891, at *11 (inconvenience and mental anguish damages not recoverable).

Courts have repeatedly dismissed claims for purely emotional injuries arising from delayed flights. See Rubin v. Air China Ltd., No. 5:10-cv-05110-LHK, 2011 WL 2463271, at *2-4 (N.D. Cal. June 21, 2011); Lee, 2002 WL 1461920, at *3. Here, Nwokeji suffered no physical injury and never saw a medical professional as a result of the experience.[79]

---

[79] Arik SOF ¶¶ 65-66; Arik Pl. Resp. ¶¶ 65-66.

Accordingly, Counts 3 and 4 are subject to dismissal even if properly brought under the Montreal Convention.

### 2.   Articles 17(2) And 19: Baggage Delay And Damage

Nwokeji alleges that the defendants caused his luggage to be delayed for a period of 19 days[80] and as a result, breached their respective contracts with him.  Amended Compl. ¶¶ 33-37. He also alleges that the bag he retrieved at the MMIA warehouse was damaged and missing items.[81]  Article 17(2) expressly provides for liability in the case of the loss of, or damage to, checked baggage "during any period within which the checked baggage was in the charge of the carrier".  Montreal Convention, art. 17(2).  Article 19 provides the "exclusive remedy for damages in instances of delay."  Helge Mgmt., Inc., 2012 WL 2990728, at *3.

### a.   Arik Airlines

Arik had no relationship with Nwokeji's missing bag so as to implicate liability for baggage delay.  Nwokeji checked two bags with American for flight AA 1165 from Boston to New York.[82]  One bag did not arrive in New York with Nwokeji, so he was unable to check it on his Arik flight.[83]  Therefore, American arranged for the missing bag to be sent to Lagos with BA.[84]  Arik never handled nor was in possession of Nwokeji's second bag.[85]

Under Article 36, in the context of successive carriers, liability is limited to the carrier who performed the carriage.  See Montreal Convention, art. 36; see also Best v. BWIA W. Indies

---

[80] Pl. SOF ¶ 17; American Resp. ¶ 17; Arik Resp. ¶ 17.  Arik disputes this fact but not as to the period of time.  At oral argument, Nwokeji claimed for the first time that his luggage was delayed for 22 days.  This argument is contradicted by his own statement of facts and affidavit. See Pl. SOF ¶ 17 ("A full 19 days delay."); Docket No. 57-1 at ¶ 20 (same).
[81] Arik SOF ¶¶ 29-30; Arik Pl. Resp. ¶¶ 29-30.
[82] Arik SOF ¶ 3; Arik Pl. Resp. ¶ 3.
[83] Arik SOF ¶¶ 7, 15; Arik Pl. Resp. ¶¶ 7, 15.
[84] Arik SOF ¶ 12; Arik Pl. Resp. ¶ 12.
[85] Arik SOF ¶ 35; Arik Pl. Resp. ¶ 35.

<u>Airways Ltd.</u>, 581 F. Supp. 2d 359, 364-65 (E.D.N.Y. 2008) (foreclosing plaintiffs from seeking

compensation from successive carrier for what occurred onboard different carrier during separate

segment of plaintiff's trip).  Accordingly, Arik, as a successive carrier, is not liable for the delay

and damage that occurred aboard another carrier.  In addition, Nwokeji admits that "all parties

agree" that his baggage was delayed by either American or BA.  Docket No. 56 at 3.  Thus, Arik

may not be held liable for the delayed and damaged bag under any theory.

      b.   <u>American Airlines</u>

Nwokeji's claims against American fail even if they were brought under the Montreal

Convention because he did not follow the proper procedure for notifying American of his

baggage-related claims.

Article 31 of the Montreal Convention imposes conditions on any claim concerning

baggage.  It states:

> (1) Receipt by the person entitled to delivery of checked baggage or cargo
> without complaint is <u>prima facie</u> evidence that the same has been delivered in
> good condition and in accordance with the document of carriage . . .

> (2) In the case of damage, the person entitled to delivery must complain to the
> carrier forthwith after the discovery of the damage, and, at the latest, within
> seven days from the date of receipt in the case of checked baggage . . . In the
> case of delay, the complaint must be made at the latest within twenty-one days
> from the date on which the baggage or cargo have been placed at his or her
> disposal.

> (3) Every complaint must be made in writing and given or dispatched within the
> times aforesaid.

> (4) If no complaint is made within the times aforesaid, no action shall lie against
> the carrier, save in the case of fraud on its part.

Montreal Convention, art. 31.

Thus, Article 31 bars certain claims against a carrier if there has been no timely notice of

damage.  Montreal Convention, art. 31.  Article 31(3) expressly requires that notice be given in

writing. Id. at art. 31(3). Verbal or actual notice is insufficient as a matter of law. Molefe v. KLM Royal Dutch Airlines, 602 F. Supp. 2d 485, 495 (S.D.N.Y. 2009) (collecting cases). "The purpose of Article 31 is to place the carrier on notice that it may be held liable for reimbursement and to provide it with an opportunity to investigate claims. . . . [N]otice need not be in any particular form; as long as it gives the carrier notice of possible liability, and the information it needs to investigate, it is sufficient." Zurich Am. Ins. Co. v. Lan Cargo S.A., No. 12 Civ. 9227 (CM), 2013 WL 7963678, at *2 (S.D.N.Y. Dec. 9, 2013). Failure to provide an air carrier with proper notice of a claim relating to baggage may be fatal to that claim "save in the case of fraud" on part of the carrier. Montreal Convention, art. 31(4).

The extent of Nwokeji's written communications regarding his baggage were as follows. After discovering that his second bag was missing, but before retrieving it, Nwokeji claims he wrote his name on a BA register.[86] He provided BA with nothing else in writing.[87] Indeed, Nwokeji first notified American of the missing contents of his bag during discovery in this case.[88]

Nwokeji did not submit written notice to American regarding the alleged damage to his checked bag within 7 days from the date he received it, or by July 26, 2014, as required under Article 31 of the Montreal Convention. See Montreal Convention, art. 31. He also did not complain to American about his delayed bag by August 16, 2014 (within 21 days after the bag was placed at his disposal). See id. Indeed, Nwokeji did not lodge a written complaint with

---

[86] American SOF ¶ 44; American Pl. Resp. ¶ 44.

[87] American SOF ¶ 46; American Pl. Resp. ¶ 46. At his deposition, Nwokeji was asked the question "[b]ut you did not provide anything in writing". Docket No. 47-2 at 22. He testified: "Why would I provide it in writing?" Id. At oral argument, Nwokeji's counsel suggested that he had a demand letter. However, he did not provide such letter as part of his response to the defendants' statements of facts.

[88] American SOF ¶¶ 40, 46, 51; American Pl. Resp. ¶¶ 40, 46, 51.

American until he brought the present action.[89]  Thus, under the Montreal Convention no action

may be brought against American.  Therefore, the allegations underlying Count 1 would

similarly be subject to dismissal against American even if properly brought under the Montreal

Convention.

3. Article 19: Flight Delay

Nwokeji also brings a breach of contract claim in connection with the return leg of his

trip.  Amended Compl. ¶¶ 38-44.  Nwokeji alleges that the defendants breached the

"understanding" that passengers be given food and accommodation within "a reasonable period

of waiting or delay."[90]  Id.

Under Article 19, a carrier's liability for damage occasioned by delay is circumscribed if

the carrier can prove that it took all measures that could reasonably be required to avoid damage

or that it was impossible to take such measures.  Montreal Convention, art. 19.  The Helge court

has explained this standard as follows:

> In order to satisfy the standard of undertaking reasonable measures, the defendant
> carrier need only show that it took all precautions that in sum are appropriate to
> the risk, i.e., measures reasonably available to defendant and reasonably
> calculated, in cumulation, to prevent the subject loss . . . The failure to take any
> particular precaution that might have prevented the loss does not necessarily
> prevent the carrier from relying on this defense; not every possible precaution
> must be taken.

---

[89] American SOF ¶ 64.  Nwokeji maintains that he signed the lost baggage log with BA.
American Pl. Resp. ¶ 64.  At oral argument, Nwokeji appeared to argue that this was sufficient to
satisfy American's written complaint requirements because BA was an agent of American.
However, Nwokeji has offered no factual or legal foundation for his argument that such actions
were sufficient.  Accordingly, that argument is waived.  See Redondo-Borges v. U.S. Dep't of
Hous. & Urban Dev., 421 F.3d 1, 6 (1st Cir. 2005).

[90] To the extent Nwokeji seeks inconvenience or mental anguish damages as a result of his
delayed flight, such damages are not recoverable under the Montreal Convention.  See Bassam,
287 Fed. Appx. at 318; Seshadri, 2014 WL 5606542, at *10; Eke, 2013 WL 12201891, at *11.  It
is not clear what economic damages Nwokeji is seeking in connection with the delay of flight
W3 107.  He appears to claim only $270 in monetary losses, which is the cost of his new flight
from New York to Boston.  Amended Compl. ¶ 27.

Helge Mgmt., Inc., 2012 WL 2990728, at *4 (internal citations omitted).  Courts routinely

dismiss claims arising from delayed flights that result in prolonged waiting periods.  See, e.g.,

Rubin, 2011 WL 2463271, at *2-4 (dismissing claim as a result of plaintiff being trapped in a

"freezing" airport for 13.5 hours); Lee, 2002 WL 1461920, at *3 (dismissing claim as a result of

plaintiff being trapped in a holding area for several hours "without adequate food, water,

restroom facilities, and information regarding the status of" the flight).

>    a.    American Airlines

Nwokeji has not demonstrated that American was in any way responsible for the delay of

Arik flight W3 107.  American does not fly to Nigeria.[91]  In this action, American is only a

successive carrier under Article 36 of the Montreal Convention.  As a result, it is liable "only if it

was the carrier that performed the carriage when the accident or delay occurred."  Montreal

Convention, art. 36; see Selke v. Germanwings GmbH, 1:17-cv-00121-GBL-TCB, 2017 WL

3114443, at *9 (E.D. Va. July 20, 2017).  Because American was not the actual carrier when the

delay occurred, it cannot be held liable.

>    b.    Arik Airlines

Arik is the appropriate defendant carrier for these allegations.  To show that it took

reasonable measures, Arik has produced evidence of its actions on August 3, 2014 and August 4,

2014.  Flight W3 107 was delayed because of a fuel shortage in Lagos.[92]  As a result, the aircraft

used for flight W3 107 was on the ground standing by while Arik undertook efforts to obtain the

aviation fuel necessary for the journey.[93]  Arik provided meals and hotel accommodations to the

---

[91] American SOF ¶ 69; American Pl. Resp. ¶ 69.
[92] Arik SOF ¶ 69.
[93] Arik SOF ¶ 70;  Arik Pl. Resp. ¶ 70.

passengers of flight W3 107 on the morning of August 4, 2014.[94]  Arik also offered passengers

(1) a 50% discount on their next travel with Arik; (2) no date change fees for those opting to

reschedule their carriage on flight W3 107; and (3) a full refund for those choosing to cancel

their reservation altogether.[95]

　　　Nwokeji provides no relevant or admissible evidence[96] to controvert Arik's assertion that

the fuel shortage was unforeseen nor does he identify any reasonable measure that Arik could

have taken, but failed to take, in order to avoid or minimize the delay in his travel.  Nwokeji

chose to remain in the MMIA waiting area overnight after being told that the flight was

experiencing fuel issues and was not at the gate.[97]  He availed himself of the food and hotel

accommodations provided by Arik.[98]  He rejected the airline's overture for rescheduling,

cancellation and/or future travel.[99]

　　　In addition, Arik told Nwokeji that he would need to speak with American Airlines

regarding his connecting flight in New York.[100]  However, Nwokeji did not reach out to

American until after he arrived in New York and his flight to Boston had departed.[101]  Under the

relevant legal standard, Arik took measures reasonably required to prevent damage to Nwokeji.

Accordingly, the allegations underlying Count 2 would be subject to dismissal even if plead

under the Montreal Convention.

---

[94] Arik SOF ¶ 55; Arik Pl. Resp. ¶ 50.
[95] Arik SOF ¶ 60; Arik Pl. Resp. ¶ 60.
[96] See supra note 55.
[97] Arik SOF ¶ 50; Arik Pl. Resp. ¶ 50.
[98] Arik SOF ¶¶ 55, 57; Arik Pl. Resp. ¶¶ 55, 57.
[99] Arik SOF ¶ 61; Arik Pl. Resp. ¶ 61.
[100] Arik SOF ¶ 73; Arik Pl. Resp. ¶ 73.
[101] American SOF ¶ 68.  Arik SOF ¶ 73; Arik Pl. Resp. ¶ 73.

## V.   RECOMMENDATION

For all of the foregoing reasons, the Court recommends that the District Judge assigned to this case grant the defendants' motions for summary judgment and grant in part and deny in part American's motion to strike.

## VI.   REVIEW BY DISTRICT JUDGE

The parties are hereby advised that under the provisions of Fed. R. Civ. P. 72(b), any party who objects to these proposed findings and recommendations must file specific written objections thereto with the Clerk of this Court within 14 days of the party's receipt of this Report and Recommendation.  The written objections must specifically identify the portion of the proposed findings, recommendations, or report to which objection is made, and the basis for such objections.  See Fed. R. Civ. P. 72.  The parties are further advised that the United States Court of Appeals for this Circuit has repeatedly indicated that failure to comply with Fed. R. Civ. P. 72(b) will preclude further appellate review of the District Court's order based on this Report and Recommendation.  See Phinney v. Wentworth Douglas Hosp.,199 F.3d 1 (1st Cir. 1999); Sunview Condo. Ass'n v. Flexel Int'l, Ltd., 116 F.3d 962 (1st Cir. 1997); Pagano v. Frank, 983 F.2d 343 (1st Cir.1993).

/s/ Jennifer C. Boal
JENNIFER C. BOAL
United States Magistrate Judge